The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost as well as the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for some modifications that do not affect the **outcome**.
***********
In addition to the 24 April 1991 Opinion and Award of former Deputy Commissioner Scott Taylor, which is part of the record in this matter, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 29 June 1989, at the time of the injury by accident in this matter, the parties were subject to and bound by the provisions of the Workers Compensation Act.
2. On 2 January 1997, plaintiff, by consent order, consented to changing her treating orthopedic surgeon from Dr. Walton W. Curl of Winton-Salem, North carolina to Dr. John Evans of San Antonio, Texas, where Ms. Neal has lived for the last several years.
3. Plaintiff and defendant stipulated to the following medical records:
Dr. John Evans (1 page)
Humana Hospital (18 pages)
University of Texas at San Antonio (92 pages)
Dr. Anita King-Bowes (14 pages)
Dr. Richard Holt (18 Pages)
Corvel (9 pages)
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was born 9 July 1934. She completed high school.
2. Plaintiff worked for defendant for 13 years at its Greensboro plant as a "spooler tender in its yarn department beginning in September 1976.
3. On 29 June 1989, plainitff suffered a compensable injury by accident when she fell to her right knee. Plaintiff worked from 29 June through 25 September 1989 but has been unable to work in any capacity since that date. By an Opinion and Award filed 24 April 1994, former Deputy Commissioner Scott Taylor awarded to plaintiff "temporary total disability compensation from 26 September 1989 through 20 July 1990, and continuing until plaintiff returns to work or reaches maximum medical improvement, whichever first occurs.
4. On 27 September 1991, defendant terminated plaintiffs employment.
5. On September 25, 1995 plaintiff voluntarily attended an evaluation by physical therapist Thomas Rafferty at Triad Therapy in Greensboro, North Carolina at defendants request. She also attended an evaluation that same day by Dr. Paul D. Harkins, again at defendants request. Defendant had earlier furnished both examiners with a job videotape prepared by defendant, and defense counsel met with Dr. Harkins prior to his report. Defendant would later supply Dr. Harkins and Triad Therapys reports, along with the job video, to plaintiffs treating physician Dr. Walton Curl.
6. On or about November 8, 1995 defendant wrote a letter to plaintiff in Texas, informing her that defendant "currently {has} a position that meets your current physical restrictions. We have an Inspector trainee position open at White Oak, defendants plant in Greensboro. Defendant further informed plaintiff that the job would pay $8. 50 per hour and would start out at 8 hour shifts, eventually becoming 12-hour shifts after 4 to 6 weeks. Defendant advised plaintiff that "This position complies with Dr. Harkins and Triad Therapys recommendations which were that plaintiff could perform "less than sedentary work, that Cone Mills should provide "wheelchair transportation to and from her work station, and that defendant should allow "gradual increase of the duration of her workshift from 8 to 12 hours over 4-6 weeks. Triad Therapy opined that plaintiff could lift five pounds only occasionally, could stoop, bend, reach or grasp only occasionally, and could not squat, kneel, crawl or climb. Dr. Harkins noted that plaintiff demonstrated difficulty in getting in and out of a chair, could walk only short distances, needed assistance with daily living, and should sit in a chair of kitchen height for the most part.
7. Defendant described its proffered employment as sedentary in nature with a sit/stand option. Among the duties of the job were "entering defects in computer, apply stickers, measure cloth for correct length, complete entries at end of runs . . . maintain inspection production at a level consistent with speed of Sanforizer, maintain required records, perform cleaning duties as needed to machinery and work area . . . run and inspect cloth . . . remove or cut strings from cloth . . . brush or pick lint from cloth. . . .
8. In or about late November or early December 1995 plaintiff rejected defendants above job offer on the basis that the jobs duties were not suitable to her capacities.
9. The Commission denied defendants December 1995 Form 24 Application to terminate plaintiffs compensation, and defendant sought de novo review.
10. Evaluating physician Harkins and treating physician Curl felt plaintiff was physically capable of performing the proffered employments duties, but not without some level of right knee pain, which only the plaintiff could identify. Dr. Harkins further testified that he was "bothered by the fact that plaintiff would need assistance getting to and from the work place. Plaintiffs right knee is so painful, weak and stiff that she lacks the ability, without assistance, to stand or walk long enough to be able to get ready for work, and to travel to and return from any work location. Once at work plaintiff also would need assistance standing or walking.
11. Plaintiff testified that she continues to suffer from chronic severe right knee pain, swelling and giving way which is worse that it was in June 1990 when she testified before Deputy Commissioner Taylor. She testified that she is unable to walk very far or to stand very long due to her right knee pain and weakness. She testified that she cannot sit for more than a few hours at a time because her right knee becomes stiff. She testified that her husband helps her with the tasks of daily living, including bathing; she seldom leaves her home due to the condition of her right knee. Plaintiff further testified that her right knee pain interferes with her concentration and thinking.
12. The undersigned credits plaintiffs testimony and finds that her right knee pain has not improved since the first hearing in this claim, but in fact, has gotten worse, prevents her from performing the duties of the proffered employment, and continues to prevent her from earning wages in any employment, including sedentary employment.
13. Moreover, defendant offered no convincing evidence that plaintiffs condition has improved since 1991, and presented no evidence that the job offered plaintiff was one available in the competitive employment market and that other employers would likely hire plaintiff with her limitations in the proffered employment at a comparable wage level.
14. The proffered employment is not suitable to plaintiffs capacities, and plaintiffs refusal to accept the employment was justified.
***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Given the debilitating and chronic nature of plaintiffs knee injury, taken with the physical requirements of the employment procured for plaintiff by defendant, plaintiffs refusal to accept the employment procured for her by defendant was justified. N.C.G.S. 97-32.
2. Plaintiff is entitled to a presumption of continuing disability owing to the disability award made by former Deputy Commissioner Scott Taylor in his 24 April 1991 Opinion and Award. Kisiah v.W.R. Kisiah Plumbing, Inc. 124 N.C. App. 72, 476 S.E.2d 434, discrev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997).
3. This presumption was not successfully rebutted by defendant.Dalton v. Anvil Knitwear, 119 N.C. App. 275, 458 S.E.2d 251,disc rev. denied, 341 N.C. 647, *** parralell cite*** (1995).
4. As a result of plaintiffs 29 June 1989 compensable injury, plintiff has been temporarily totally disabled from 26 September 1989 to the present and continuing, and remains entitled to the payment of temporary total disability compensation until defendant obtains permission from the Industrial Commission to cease such payment. N.C.G.S. 97-29.
5. Defendants motion to terminate plaintiffs disability benefits for refusal of the inspector trainee position is denied.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall continue to pay weekly disability compensation benefits to plaintiff until further order of the Commission, subject to a reasonable attorney fee of every fourth compensation check, to be paid directly to plaintiffs counsel.
2. Defendant shall pay the costs.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER